**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CARLA LEGATES, | |
|                   Plaintiff, | |
| vs. | Case No. 09-CV-29-FHM<br>(Base File) |
| STATE OF OKLAHOMA, ex rel.,<br>ROGERS COUNTY DEPARTMENT OF<br>HUMAN SERVICES; et al., | |
|                   Defendants. | |
| and | |
| RAY WOODSON, | |
|                   Plaintiff, | |
| vs. | Case No. 09-CV-644-FHM, consolidated<br>with Case No. 09-CV-29-FHM |
| CLAREMORE REGIONAL HOSPITAL,<br>LLC, d/b/a CLAREMORE REGIONAL<br>HOSPITAL; et al., | |
|                   Defendants. | |

## OPINION AND ORDER

The following motions have been fully briefed and are before the undersigned United States Magistrate Judge for disposition: Motion to Dismiss First Amended Complaint [Dkt. 35] filed by Defendants Bergdorf, Box, Gassaway, Priest, Pruitt, Vecsey, and State of Oklahoma; Claremore Regional Hospital's Motion to Dismiss [Dkt. 8, in Case No. 09-CV-644 and Dkts. 77 and 92 in 09-CV-29]; and Defendants' Motion to Dismiss [Dkt. 15 in Case No. 09-CV-644].

**Background**

Plaintiff Carla Legates is the natural mother of three children, JL, RAW, and RMW. The individually named defendants are current or former employees of the Oklahoma Department of Human Services (DHS) who were involved in the Oklahoma state court child welfare proceedings that gave rise to this case.  In her First Amended Complaint Plaintiff Legates alleges the individual defendants conspired in furtherance of an unconstitutional baby-snatching scheme that exists in Rogers County.

Legates alleges that as part of this scheme her children were taken from her on the basis of emergency orders obtained when DHS employees did not believe an emergency existed.  Legates states her first child, JL, was taken into DHS custody when he was two days old.  Legates claims she later relinquished her parental rights to him based on representations made to her by DHS employees that the child she was pregnant with at the time, RAW, would not be taken by DHS.  According to Legates, the representations were not fulfilled.

RAW was born in Kansas on September 7, 2007.  Legates alleges that on October 2, 2007, while she was in Oklahoma for a hearing involving JL, she was questioned by DHS officials about the whereabouts of RAW.  She states she was forced to go to court, take the witness stand, was questioned by the judge as to the whereabouts of RAW.  She refused to answer the questions and was jailed for contempt.  In jail her phone calls were monitored and the location of RAW was discovered.  An emergency order was obtained and RAW was removed from the father.

Legates alleges Defendants Vecsey, Gassaway, and Bergdorf assisted in obtaining the October 2007 emergency order.  Legates alleges that prior to obtaining the emergency

2

order, Defendants Vecsey, Gassaway, and Bergdorf failed to do any investigation, but "simply looked at information in the computer system without ever finding out if any of the information was true." [Dkt. 25, ¶ 20]. She further alleges that much of the information was, in fact, false. Legates alleges that thereafter DHS refused to release RAW back to the parents and failed to make reunification efforts. Legates states that Defendants Vecsey, Gassaway, and Bergdorf intended that Legates's parental rights in RAW be terminated as evidenced by the fact that RAW was placed with the foster parent who allegedly adopted JL. Legates alleges that RAW was subsequently placed in a dangerous foster home which resulted in DHS having to obtain an emergency order to change placement.

On August 2, 2008, RMW was born at Claremore Regional Hospital in Oklahoma. Legates alleges that the hospital was contacted by Defendants and instructed to notify DHS when Legates gave birth, which Legates states is a violation of HIPPA. Legates alleges that within hours of the birth of RMW, Defendant Bergdorf allegedly obtained a verbal emergency order which placed custody of RMW with DHS. Defendant Pruitt advised the hospital of the alleged emergency order, requested the baby be separated from the parents, and advised that Legates was a flight risk. Legates alleges that Defendants Bergdorf and Pruitt did not believe that an emergency existed. The emergency order was based on the affidavit of Pruitt, as instructed by Bergdorf. According to Legates, the affidavit contained misrepresentations and omissions and Pruitt and Bergdorf failed to investigate before requesting emergency custody, merely relying on what other workers told them. Legates states that Defendants have admitted that "Plaintiff is drug free, has a suitable place to live and can financially provide for her and her baby." [Dkt. 25, ¶ 27].

3

According to Legates, her baby was taken pursuant to an unconstitutional policy and baby-snatching scheme under which babies are "taken from their parents based on prior DHS history irrespective of each individual parent's current ability to take care of the child based solely on such prior history." *Id.*

In May of 2009 a three week jury trial was held wherein the jury rendered a verdict in Legates' favor and her parental rights to RAW[1] were not terminated.

Plaintiff Ray Woodson is the father of RAW (Woodson's Complaint refers to RAW as RW, Jr.) and RMW. In a separate action Woodson alleges that on October 2, 2007, an employee of Defendant Claremore Regional Hospital provided information about Carla Legates, the mother of Woodson's unborn child to DHS which lead to the taking of his son and denied him the right to enjoy the parent child relationship with his son for two years.

He states that on October 3, 2007, Defendants Bergdorf, Gassaway, and Vecsey prepared a fraudulent affidavit which was used to obtain an order to wrongfully take RAW from him when no emergency existed. Woodson states he was arrested for not giving up his son to government officials. He fought to regain his right to the enjoyment of the parent child relationship with his son but alleges he was repeatedly denied his rights by Bergdorf, Pruitt, Priest, Vecsey, and Gassaway. In May 2009, after a 14-day jury trial Woodson obtained his parental rights to his minor son, RAW, in the Rogers County District Court.

Woodson alleges that on August 2, 2008, an employee of Claremore Regional Hospital provided medical information about the birth of his daughter RMW to DHS. Woodson states that providing medical information lead to the taking of his minor daughter

---

[1] It is not entirely clear in Legates' Complaint, but appears that the May 2009 jury trial addressed the parental rights to RAW. [Dkt. 25, ¶ 25].

4

and denied him the right to enjoy the parent child relationship with daughter for over one year.  Woodson states that Defendant Pruitt initiated the wrongful taking of RMW using false allegations, lies, and misrepresentations.  According to Woodson, in her affidavit Pruitt admitted RMW was a healthy baby girl with no medical problems.

Woodson states that in December 2009 at the conclusion of a two day adjudicatory hearing, the matter was dismissed as to him and RMW was found not to be deprived as to him.  According to Woodson, in spite of this finding, DHS retained custody of RMW for the next eight months in further violation of his rights.  In addition, Woodson asserts that the disclosure of medical information by Claremore Regional Hospital was a violation of the Health Information Portability and Accountability Act (HIPPA) and the individual civil rights of Woodson and his minor children.

**Motion to Dismiss Standards**

To survive a motion to dismiss, a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  Plaintiffs must do more than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247.  Rather, Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible."  *Id.* (quoting *Twombly*, 127 S.Ct. at 1971 n. 10).  Plausibility does not mean "likely to be true," it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief.  *Id.*

5

## Claremore Regional Hospital Motion to Dismiss

The actions taken by Claremore Regional Hospital (Hospital) which Plaintiff Woodson claims leads to liability for violation of his rights is disclosure of medical information about Carla Legates and the birth of her children JL and RMW to DHS upon the request of DHS.[2]  The Court finds that under the broadly worded statute, 10A Okla. Stat. §1-2-105(C)(2),[3] the Hospital was required to provide medical information to DHS upon request.  That statute does not require the Hospital to delve into the underlying purpose of a DHS request to satisfy itself that a request for information is justified.

Woodson asserts that the disclosure of medical information by the Hospital is a violation of HIPPA.  The Court agrees with the Hospital's assertion that although HIPPA contains provisions for the imposition of civil and criminal penalties for improper handling or disclosure of health information, no private right of action exists within the Act.  *See Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (HIPPA does not support a private cause of action), *Slocum v. City of Claremore*, 2009 WL 2835399, at *6 (N.D. Okla. 2009)(same). The conclusion that HIPPA does not contain a private cause of action eliminates the need for the Court to address the parties' arguments about whether the disclosures in this case fall within the good faith exception to HIPPA provisions.

---

[2]  Plaintiff Legates has filed a Complaint in Intervention, [Dkt. 72], in which she attempts to assert claims against the Hospital.  The analysis applied to Woodson's claims against the Hospital also disposes of Legates' claims against the Hospital.

[3]  Section 1-2-105(C)(2) provides:
> As necessary in the course of conducting an assessment or investigation, the Department [of Human Services] may request and obtain, without a court order, copies of all prior medical records including, but not limited to, hospital records, medical, and dental records.  The physician-patient privilege shall not constitute grounds for failing to produce such records.

The Court finds that Woodson has not stated a claim against the Hospital upon which relief can be granted.  Therefore, the Hospital's Motions to Dismiss [Dkt. 8, in Case No. 09-CV-644-FHM; and Dkts. 77 and 92 in 09-CV-29-FHM] are GRANTED.  All claims against the Hospital are hereby DISMISSED and the action terminated as to the Hospital. This disposition renders MOOT Claremore Regional Hospital's Motion to Strike, [Dkt. 62], and the Motion for Protective Order, [Dkt. 87].  The disposition of these motions eliminates any need to further consider the Complaint in Intervention filed by Legates. [Dkt. 72].

## Claims Against the Department of Human Services (DHS)

To the extent Plaintiffs seek money damages against the Department of Human Services (DHS) under 42 U.S.C. § 1983, they have failed to state a claim upon which any relief can be granted.  Actions under § 1983 may only be prosecuted against "persons." The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  DHS is an arm of the State of Oklahoma to which immunity under the Eleventh Amendment applies.  Consequently, Plaintiffs' allegations against DHS have failed to state a claim against a "person" covered by Section 1983. *McKinney v. State of Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991) (holding DHS is entitled to Eleventh Amendment immunity).

Plaintiff Legates asserts that she is only seeking injunctive relief against DHS. [Dkt. 38, p. 12].  Legates also asserts that Defendant's request to dismiss the claim for injunctive relief is "moot in light of the court order of February 9, 2009," and that she will be filing a motion for preliminary injunction pursuant to Fed. R. Civ. P. 65.  [Dkt. 38, p. 13].  The February 9, 2009 order denied Legates' motion for hearing on a preliminary injunction,

7

observing that no motion for preliminary injunction had been filed. [Dkt. 11].  That Order does not address the question of whether Plaintiffs have stated a claim for injunctive relief. The Court notes that, as of the current date, no motion for preliminary injunction has been filed.  This Opinion and Order does not, therefore, address the propriety of a preliminary injunction, but addresses whether Plaintiffs have stated a claim for injunction upon which relief can be granted.  They have not.

Fed. R. Civ. P. 65(d)(1) sets out the requirements for the content and scope of injunctions.  The rule provides: "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required."  Nothing within Plaintiffs' complaints or their subsequent filings describe what terms they seek to have included in an injunction or provide any detail about the acts they seek to restrain.  "Injunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible." *N.L.R.B. v. U.S. Postal Service*, 486 F.3d 683, 691 (10th Cir.2007) (Tymkovich, J. concurring and citing cases).  Based on the foregoing, to the extent the Plaintiffs' Complaints can be read to seek an order directing DHS to obey the law, they have not stated a claim upon which relief can be granted.

The Motion to Dismiss is GRANTED as to DHS.

## Individual Defendants

The individual defendants have asserted the defense of qualified immunity. Qualified immunity generally shields governmental officials performing discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity seeks to balance the protection of constitutional rights and the "substantial social costs" of imposing liability on public officials. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Supreme Court has identified three purposes underlying the grant of qualified immunity: protection of the public from unwarranted timidity on the part of public officials; ensuring that talented candidates for public service are not deterred by the threat of damage suits from entering public service; and reduction of the chance that lawsuits will distract from the performance of public duties. *Richardson v. McKnight*, 521 U.S. 399, 408, 117 S.Ct. 2100, 138 L.Ed.2d (1997).

There is no heightened pleading standard for cases brought under §1983, however a complaint must meet the minimal standard of notice pleading articulated by the Supreme Court in *Twombly*. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). In *Robbins* the Tenth Circuit reversed the district court denial of a motion to dismiss in a § 1983 action and instructed the district court to dismiss the case for failure to state a claim upon which relief can be granted where plaintiffs did not allege sufficient facts with respect to individual defendants to provide fair notice. The Tenth Circuit observed that complaints in §1983 cases have a likelihood of failing the requirements of notice and plausibility because they typically involve complex claims against multiple defendants. *Id.* Therefore,

9

the *Twombly* requirement that a complaint contain enough factual allegations to state a plausible claim to relief may have "greater bite" in the context of a §1983 action as a result of the interest in resolving the defense of qualified immunity at the earliest possible stage. *Id.*

In *Robbins* the Court stated that to provide fair notice in the context of a §1983 case, it is particularly important "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*." *Id.* at 1249-53. (emphasis in original). In addition the Tenth Circuit said the court is not required to speculate as to the role of each individual defendant "because the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *Id.* at 1250. When a complaint uses the collective term defendants, or lists the defendants individually but makes no distinction as to what acts are attributable to whom, it is impossible for an individual defendant to ascertain what particular unconstitutional acts they are alleged to have committed. *Id.* When a complaint contains such non-specific allegations, the Tenth Circuit has determined that it is appropriate to dismiss a plaintiff's claims. *Id.* at 1251-54.

Assuming a complaint sufficiently states allegations of *who* did *what* to *whom,* the Court engages in a three-part inquiry to analyze the qualified immunity defense. The Court asks whether the allegations, if true, establish a constitutional violation. If the answer to that question is yes, then the Court examines whether the law was clearly established at the time the alleged violation occurred. If the law was clearly established, then the Court asks whether extraordinary circumstance such as reliance on advice or counsel or reliance on a statute prevented the official from knowing that the actions were unconstitutional. *Gomes v. Wood*, 451 F.3d 1122, 1134 (2006) (outlining standard and citing cases).

10

In addition to providing defendants notice, a statement of specific allegations particular to each individual defendant provides the Court with a basis to analyze whether a plaintiff has stated a plausible claim for relief.  When a complaint does not provide sufficient detail, the Court cannot assess whether the allegations, if true, establish a constitutional violation without having to engage in speculation.  Applying the foregoing principles, the Court will address the allegations asserted by each of the Plaintiffs against each of the individual defendants.  The Court has not addressed the many allegations asserted that fail to identify any defendant allegedly responsible.

Maggie Box

The Motion to Dismiss is GRANTED as to Defendant Box.  Plaintiffs have failed to state a claim upon which relief can be granted.

Legates and Woodson each allege Defendant Box is the Child Welfare Director at Rogers County and responsible for implementing policy at Rogers County DHS. [Dkt. 25, ¶3; Dkt. 2, ¶ in Case No. 09-CV-644].  Plaintiffs make no other references to Defendant Box or any allegations as to what, exactly, she is to have done.

Kila Bergdorf

Legates alleges Bergdorf is a child welfare supervisor at Rogers County DHS. [Dkt. 25, ¶4].  She alleges that with respect to child RAW, in October 2007 Bergdorf "assisted in obtaining an emergency order and, prior to obtaining the order, no investigation was done concerning the well-being of RAW and . . . Bergdorf failed to do any investigation." *Id.* at ¶ 20.  Legates further alleges Bergdorf and others involved in getting the emergency order concerning RAW "simply looked at information in the computer system without ever

11

finding out if any of the information was true." *Id.* According to Legates, much of the information in the affidavit was false, including statements that:

> Plaintiff was homeless and living in a crack house, all of which turned out to be patently untrue; that Plaintiff would not assist the District Attorney's office in the prosecution of J.L.'s father, when in fact, Plaintiff was listed as the only lay witness by the District Attorney's office in the criminal prosecution of J.L.'s father; that Plaintiff had failed to correct the conditions that had led to the removal of J.L. when in fact, Plaintiff had divorced the father of J.L., had filed protective orders against J.L.'s father, and J.L.'s father was incarcerated for the domestic violence; that Plaintiff was unsafe and unable to care for R.A.W. and Plaintiff's medical conditions while she was pregnant was blatantly misrepresented.

[Dkt. 25, ¶ 20]. The Court finds that the allegations against Bergdorf give fair notice of what she is supposed to have done. Legates alleges Bergdorf assisted in obtaining an emergency order, that the affidavit contained false information and no investigation was conducted.

The law is clearly established that "government officials' procurement 'through distortion, misrepresentation and omission,' of a court order to seize a child is a violation of the Fourth Amendment." *Malik v. Araphahoe Co. Dept. of Soc. Serv.*, 191 F.3d 1306, 1316 (10th Cir. 1999)(quoting *Malik*, 987 F.Supp. 868, 882 (D. Colo. 1997)); *U.S. v. Colonna,* 360 F.3d 1169, 1174 (10th Cir. 2004)(the Fourth Amendment is violated when an affiant knowingly and intentionally or with reckless disregard for truth makes a false statement in an affidavit to procure a warrant, but misstatements resulting from simple negligence or inadvertence will not invalidate a warrant). Although not every misstatement in an affidavit will rise to a constitutional violation, *U.S. v. Corral-Corral*, 899 F.2d 927, 934 (10th Cir. 1990)(error in address on search warrant does not rise to level of deliberate

falsehood), *U.S. v. Axselle*, 604 F.2d 1330, 1336 (10th Cir. 1979)(not every misstatement or factual inaccuracy in an affidavit will invalidate a warrant), the Court finds that the allegations against Defendant Bergdorf concerning the use of a false affidavit to procure an emergency order are sufficient to state a claim for relief that is plausible on its face.

Legates' allegations pertaining to baby RMW are similar to those about RAW. According to Legates, Defendant Bergdorf obtained a verbal emergency order placing custody of RMW with DHS just after RMW was born.  Legates alleges that Bergdorf did not believe an emergency existed.  She elaborates by stating unnamed defendants have admitted that "Plaintiff is drug free, has a suitable place to live and can financially provide for her and her baby." [Dkt. 25, ¶27].  This information is sufficiently specific to provide notice to Defendant Bergdorf.  Legates' allegations against Defendant Bergdorf state a plausible claim for relief.

Plaintiff Woodson alleged Defendant Bergdorf, Gassaway, and Vecsey prepared a fraudulent affidavit to take his son, RAW, where no emergency existed.  Woodson's allegations are specific enough to provide fair notice to Defendant Bergdorf and similar to Legates' allegations state a plausible claim for relief under §1983.

Legates' allegation that Defendant Bergdorf and others fully intended that her parental rights in RAW be terminated as evidenced by the placement of RAW with the foster parent who adopted her older child JL, [Dkt. 25, ¶ 22], does not state a claim for relief that is plausible.  The current Oklahoma statutes, as well as those in effect when the events giving rise to this suit occurred, provide the following statement of the policy of the State of Oklahoma:  "[w]henever possible siblings should be placed together[.]" 10A Okla. Stat. § 1-1-102(C)(3), renumbered from 10 Okla. Stat. § 7001-1.2 and amended by Laws 2009,

13

c. 233, §§ 10, 210, eff. May 21, 2009.  Since the policy of the State of Oklahoma to place siblings together is explicitly stated, no constitutional violation or wrongful intent can be inferred from the allegation that RAW was placed with sibling JL.

Legates also asserts that her relinquishment of rights in her child JL and her history with DHS with respect to that child improperly served as the only basis for action taken with respect to RMW. [Dkt. 25, ¶¶ 27-28].  DHS is charged with the responsibility of conducting investigations into reports of alleged child abuse and neglect.  10A Okla. Stat. § 1-2-105, renumbered from 10 Okla. Stat. § 7106, and amended by Laws 2009 c. 233, §§ 83, 216, eff. May 21, 2009.  An Oklahoma statute in effect in August 2008 when the events outlined above are alleged to have taken place provided, in relevant part:

> [A] court may terminate the rights of a parent in the following situations . . . :
>
> \*    \*    \*
>
> 6.  A finding that a subsequent child has been born to a parent whose parental rights to any other child has been terminated by the court; provided, that the applicant shall show that the condition which led to the making of the finding which resulted in the termination of such parent's parental rights to the other child has not been corrected. . . .

10 Okla. Stat. § 7006-1.1, renumbered and amended by Laws 2009, c. 233 § 263, eff. May 21, 2009.  Since the birth of a child to one who has previously had parental rights terminated is among the reasons a court may terminate parental rights, and since DHS is charged with the duty of investigating issues related to child welfare, Plaintiff's relinquishment of rights to a previous child was an appropriate consideration in instituting proceedings relating to RMW.  However under the statute, the previous termination of parental rights is not the only factor to be considered.  The statute states that there must be a showing that the conditions that lead to the termination of parental rights "has not

14

been corrected." The gravamen of Plaintiffs' claim is that they were separated from their child solely on the basis that parental rights in another child had been terminated and that no investigation was made into the current condition regarding RMW. As previously discussed, the allegation that an emergency order was procured through distortion, misrepresentation, and omission states a plausible claim of a Fourth Amendment violation.

The motions to dismiss are granted in part and denied in part with respect to Defendant Bergdorf. The only claim remaining against Defendant Bergdorf concerns the alleged false affidavit and failure to investigate with respect to procuring the emergency order for RAW and RMW. All other claims against Defendant Bergdorf are dismissed.

<u>Jessica Pruitt</u>

Legates alleges that in August 2008 when baby RMW was born an emergency order of custody was issued based on Defendant Pruitt's affidavit. According to Legates, Defendant Pruitt did not believe an emergency existed, the affidavit contained misrepresentations and omissions, and Defendant Pruitt failed to do an investigation, simply relying on what other workers told her. Legates states that the affidavit failed to state that Plaintiff:

> had a current Oklahoma residence, that the residence was suitable for Plaintiff and the child, that Plaintiff's treatment plan was virtually complete except for Plaintiff not being employed, that Plaintiff had corrected the conditions that led to the prior DHS history.

[Dkt. 25, ¶28]. Legates also states that Defendant Pruitt went to Claremore Regional Hospital to advise that an emergency order had been entered, requested that RMW be separated from her parents, and advised Legates was a flight risk. [Dkt. 25, ¶ 27].

The Court finds that for purposes of a motion to dismiss, the allegations about what was omitted from the affidavit move Legates' claim of a violation of the Fourth Amendment from the conceivable to the plausible.

Legates' allegations against Defendant Pruitt are similar to ones that were found to be sufficient in *Vanzandt v. Okla. Dept. of Human Servs.*, 276 Fed. Appx. 843 (10th Cir. 2008). In *Vanzandt,* the complaint alleged that Defendant Ruby James submitted a false affidavit for use as a statement of probable cause to procure felony child abuse charges against Plaintiff Vanzandt. The complaint recited several allegedly fabricated statements that were contained in the affidavit and produced corroborating evidence of the statements' falsity. *Id.* at 847. The Court listed several reasons for its finding that the complaint was sufficient: 1) the complaint provided notice to Defendant by directly naming Defendant; 2) specific actions allegedly taken by Defendant were alleged; 3) the specific date and purpose of the affidavit were alleged; 4) the complaint contained a detailed factual basis for why the statements were false; and 5) the complaint links the alleged actions to the end result, which was Plaintiff's arrest for felony child abuse. *Id.* at 848. In the present case, Defendant Pruitt is specifically named, the specific purpose of the affidavit is alleged and the specific allegedly false statements are asserted. The allegations are not too vague to provide sufficient notice of *who* is alleged to have done *what* to *whom*. *Robbins*, 519 F.3d at 1249-1250. (describing requirements for plausibility of claims and notice pleading under *Twombly*). Therefore, the Court finds that Legates has stated a claim upon which relief can be granted against Defendant Pruitt.

As previously discussed in connection with the allegations against Defendant Bergdorf, the Fourth Amendment is violated when a government official procures an order

to seize a child through reckless disregard for the truth, purposeful distortion, misrepresentation, or omission. *Malik*, 191 F.3d at 1316. The Court finds that with respect to Defendant Pruitt and the affidavit submitted in August 2009, Plaintiff Legates has made sufficient allegations to survive a motion to dismiss. Furthermore, as evidenced by the *Malik* case, the law was clearly established. *See also Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (no one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest).

Plaintiff Woodson alleges Defendant Pruitt initiated the wrongful taking of baby girl RMW using false allegations, lies and misrepresentations. The Court finds that Woodson's complaint gives adequate notice and alleges a plausible constitutional violation under the authorities cited above. The motion to dismiss is denied as to the allegations against Defendant Pruitt by Plaintiff Woodson.

The Plaintiffs have stated plausible claims under §1983 against Defendant Pruitt only for her actions in procuring an emergency order for baby RMW by allegedly using fraudulent information and failing to conduct an adequate investigation to determine the truth of the information contained in the affidavit.

<u>Barbara Priest</u>

Legates alleges that Defendant Priest instructed her that "if she stipulated to RAW that DHS would not take her baby even though she knew this to be false and lied to her during her prior DHS history." [Dkt. 25, ¶ 29]. These allegations fail to provide sufficient information to state a plausible constitutional or statutory violation to support liability under §1983. Legates does not state what type of stipulation was considered, whether she

accepted the stipulation, or relied to her detriment on any falsehood. In *Robbins*, the Court noted it had "no duty 'to conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one.'" 519 F.3d at 1252 (quoting *O'Brien v. DeGrazier*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).

Plaintiff Woodson's allegations against Defendant Priest are even less specific than those of Legates. The motions to dismiss are granted as to the allegations against Defendant Priest by both Plaintiffs.

<u>Janie Vecsey</u>

Legates makes the same allegations against Defendant Vecsey as she does against Defendant Bergdorf with respect to RAW, that Defendant Vecsey assisted in obtaining an emergency order, that no investigation was made, information contained in the computer was relied on in obtaining the emergency order, and that it was intended that Legates rights in RAW be terminated. [Dkt. 25, ¶¶ 20, 22]. As was the case with Defendant Bergdorf, the Court finds that these allegations are sufficiently specific to provide notice as to *who* is to have done *what*. Also, as with Defendant Bergdorf, the law was clearly established and the allegations concerning the procurement of an emergency order for RAW through the use of an allegedly fraudulent affidavit state a plausible claim for relief under §1983. The allegations in Plaintiff Woodson's complaint also give adequate notice and state a plausible claim for relief.

The motions to dismiss are therefore denied as to the allegations against Defendant Vecsey by both Plaintiffs but only for her actions in procuring an emergency order for baby RAW by allegedly using fraudulent information and failing to conduct an adequate investigation to determine the truth of the information contained in the affidavit.

### Kelly Gassaway

Legates makes the same allegations against Defendant Gassaway as she does against Defendants Bergdorf and Vecsey where she alleged these Defendants assisted in obtaining an emergency order of custody for RAW without undertaking an investigation and intending that Legates parental rights be terminated. [Dkt. 25, ¶¶ 20, 22].  As discussed with respect to Defendants Vecsey and Bergdorf, these allegations are sufficiently specific to provide notice as to *who* is to have done *what*, the law was clearly established, and the allegations state a plausible claim for relief under §1983.  Likewise, the allegations in Plaintiff Woodson's complaint also give adequate notice and state a plausible claim under §1983.

The motions to dismiss are therefore denied as to the allegations against Defendant Vecsey by both Plaintiffs but only for her actions in procuring an emergency order for baby RAW by allegedly using fraudulent information and failing to conduct an adequate investigation to determine the truth of the information contained in the affidavit.

### Claims Related to the Child JL

Legates alleges that prior to the actions taken by DHS and the individual defendants with respect to RAW and RMS, her child JL was taken from her by DHS and she relinquished her rights to him.  She asserts that her relinquishment is void because of allegedly improper actions taken by DHS and others.  [Dkt. 25, ¶¶ 12-14].  Legates does not specifically name any of the individual defendants as having taken any specific action in conjunction with the relinquishment of JL.  Under *Robbins*, Legates' claims regarding JL are subject to dismissal for that reason.  This conclusion eliminates the necessity of considering any other possible basis for the dismissal of the claims concerning the child JL.

## CONCLUSION

The Motion to Dismiss First Amended Complaint [Dkt. 35] filed by Defendants Bergdorf, Box, Gassaway, Priest, Pruitt, Vecsey, and State of Oklahoma; Claremore Regional Hospital's Motion to Dismiss [Dkt. 77] is GRANTED in part and DENIED in part. Defendants' Motion to Dismiss [Dkt. 15 in Case No. 09-CV-644] is GRANTED in part and DENIED in part. The parties' claims against Defendants DHS, Box and Priest are dismissed without prejudice.

Claremore Regional Hospital's Motions to Dismiss [Dkt. 8, in Case No. 09-CV-644 and Dkts. 77 and 92 in 09-CV-29] are GRANTED. The action is terminated as to the Hospital. This disposition renders MOOT Claremore Regional Hospital's Motion to Strike, [Dkt. 62], and the Motion for Protective Order, [Dkt. 87]. The disposition of these motions eliminates any need to further consider the Complaint in Intervention filed by Legates. [Dkt. 72].

The remaining claims in either Case No. 09-CV-29-FHM, or 09-CV-644-FHM are against Defendant Bergdorf with respect to RAW and RMW, against Defendant Pruitt with respect to RMW, against Defendants Gassaway and Vecsey with respect to RAW. The only remaining claim against these defendants is for seizure of a child allegedly in violation of the Fourth Amendment through obtaining an emergency order by use of an affidavit which allegedly contained false statements which were allegedly made intentionally, knowingly, or with reckless disregard of the truth.

SO ORDERED this 30th day of November, 2010.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

20